THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOEL BACON,
Commissioner of Highways of the Town of Veteran,
Respondent and Appellant, *v.* NORTHERN CENTRAL RAIL-
WAY COMPANY, Appellant and Respondent.

1. RAILROADS — MANDAMUS TO COMPEL RESTORATION OF HIGHWAY
UNDER THE RAILROAD LAW — A PROCEEDING INDEPENDENT OF REMEDY
FOR ENCROACHMENT GIVEN BY HIGHWAY AND TOWN LAWS AND MAY BE
MAINTAINED BY PRIVATE CITIZEN IN THE NAME OF THE PEOPLE. Man-
damus will lie at the instance of a private citizen in the name of the
People of the state to compel a lessee railroad company, which has recon-
structed a crossing in such manner as to encroach upon a highway, to
perform the public duty imposed upon it by section 11 of the Railroad
Law (L. 1890, ch. 565) of restoring the highway "to its former state or to
such state as not to have its usefulness impaired," and the proceeding is
entirely independent of the remedy given by the Highway Law (L. 1890,
ch. 568) for the removal of encroachments upon a highway, and sections
15 and 105 relating to notice of, and directions for, their removal and pro-
viding, in connection with the Town Law (L. 1890, ch. 569, § 182), that the
proceeding must be brought in the name of the town, have no application.

2. PARTIES — WAIVER OF DEFECT — DEMURRER — CODE OF CIV. PRO.
§ 2076. The owner and lessor of the railroad is not a necessary party to
the proceeding, and if it were, where the defect of parties appears
upon the face of the proceedings and defendant fails to object thereto

by demurrer under section 2076 of the Code of Civil Procedure, it is waived.

3. Change of Location and Method of Construction of Railroad Crossing — Necessity for Order of Supreme Court. Where a railroad company without legal authority has changed its line thirty-five feet to the westward, has crossed the highway at a new point and has constructed a new bridge, the abutments of which encroach upon the highway, instead of being parallel with and on the lines thereof, as the abutments of the old bridge were, it must be treated as an original crossing, which can only be lawfully accomplished by complying with section 11 of the Railroad Law providing that no railroad corporation shall construct its road across, upon or along any highway in a town without an order of the Supreme Court of the district in which such highway is situated, after at least ten days' written notice of intention to make the application for such order shall have been given to the commissioner of highways of the town.

4. When Railroad Company may not Change Line of Highway Crossed by its Track. The provision of section 11 of the Railroad Law, that "when an embankment or cutting shall make a change in the line of such highway * * * desirable with a view to a more easy assent or descent, it may construct such highway * * * on such new line as its directors may select, and may take additional lands therefor by condemnation if necessary," applies only where the existence of an embankment or cutting makes a change of grade in the highway desirable, and does not apply where the object is merely to change the highway, at a point where it is crossed by an overhead track, so that it shall approach the underpass formed by the abutments perpendicularly and not obliquely, and, therefore, obviate the necessity of changing the abutments so that they shall not encroach upon the highway; nor does the further provision, to the effect that where a railroad crosses a highway the company shall restore it "to its former state or to such a state as not to have unnecessarily impaired its usefulness," and the highway may be carried under or over the track, confer any power to change its line or to acquire additional lands.

5. Power of Court to Authorize Continuance of Abutments Encroaching upon Highway. The court has no power in a proceeding by mandamus to compel a railroad company to restore a highway at the point of an overhead crossing to such condition as will not impair its usefulness, to make permanent an encroachment of stone abutments upon a highway, provided the route of the highway is changed by acquiring additional land, so that the traveler may pass in safety over a straight course between the abutments, where their construction in that manner was without an order of the Supreme Court, as required by section 11 of the Railroad Law, and was, therefore, illegal *ab initio*.

*People ex rel. Bacon* v. *N. C. Ry. Co.*, 35 App. Div. 624. modified.

(Argued June 19, 1900; decided October 2. 1900.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the third judicial department, entered December 5, 1898, affirming an order of Special Term directing that a peremptory writ of mandamus issue commanding the Northern Central Railway Company to restore a highway in the town of Veteran, Chemung county, where that company's railroad crosses it, to such condition as will not impair its usefulness, by changing the abutments of said crossing so that they shall run parallel with the highway or by purchasing sufficient land so as to lay out the highway in the manner directed, as to details, by the court.

The relator appeals from so much of the order as directs the purchase of land and the laying out of the highway as stated. The defendant appeals from the entire order.

The railroad in question was built in 1849 and crosses the highway above grade. It extends from Williamsport, Pa., to Elmira, N. Y., and thence in a northerly direction to Canandaigua. The highway thus crossed is the main thoroughfare between Elmira and Watkins, and travel thereon is very heavy.

In the summer of 1895 the railway track was moved some thirty-five feet to the westward, and a new bridge was constructed over the highway.

From 1849 to 1895, upon the south of the highway, at the point where the railroad then crossed it, was constructed a solid stone abutment parallel with, and upon its south line, and on the northerly side a framed timber abutment was built upon a stone foundation also parallel with the highway and with the southern abutment. This old bridge was what is called a "skew" bridge, that is, its cross beams ran parallel with the highway and at a right angle with the line of the railroad.

When the track was moved to the westward in 1895, a new bridge was constructed in a different location. A solid stone abutment was laid on the south side of the highway at right angles with the line of the railroad and was so located that the eastern extremity encroached eight feet on the traveled or beaten part of the highway. This abutment was about thirty-eight feet in length, and from the eastern end extended

a solid wing of stone for the distance of thirty-five feet.
Parallel with this southern abutment and at right angles with
the line of the railroad, the northern abutment was con-
structed of solid stone and so placed that its western extremity
encroached eight feet five inches on the traveled or beaten
part of the highway. Its length was about thirty-eight feet,
and from its western extremity a wing of solid stone extended
in a northwesterly direction for a distance of thirty-five feet.
The highway is three rods wide.

Since the year 1886 the railroad has been in the possession
of, and operated by, the defendant company.

The changes in the line of the road and location of bridge,
as described, were made by the defendant.

*Frederick Collin* for plaintiff, respondent and appellant.
The verdict of the jury settled the fact that the existing con-
struction of the railroad crossing unnecessarily impaired the use-
fulness of the highway. (*People ex rel.* v. *Kearney*, 44 App.
Div. 449; *People ex rel.* v. *Lyman*, 46 App. Div. 312.) Land
once taken and appropriated to a public use, pursuant to law,
under the right of eminent domain, cannot, under general
laws and without special authority from the legislature, be
appropriated to a different public use. (*P. P. & C. I. R. Co.*
v. *Williamson*, 91 N. Y. 552; *People ex rel.* v. *N. Y. C. & H.
R. R. R. Co.*, 156 N. Y. 570; *D., L. & W. R. R. Co.* v. *City
of Buffalo*, 158 N. Y. 266.) The placing of these abut-
ments within the beaten and traveled portion of this highway,
even were it true that the crossing was legally located,
was illegal and cannot be legalized by the court. (*Jones* v.
*R. R. Co.*, 169 Penn. St. 333; *D., L. & W. R. R. Co.*
v. *City of Buffalo*, 158 N. Y. 266; *Township* v. *P. R.
R. R. Co.*, 49 N. J. Eq. 11; 3 Elliott on Railroads, §§ 1099,
1105, 1109; Pierce on Railroads, 242, 243, 244, 245;
*R. R. Co.* v. *Comrs.*, 31 Ohio St. 338; Elliott on Roads
& Streets, 599; *Fenwick* v. *E. L. Ry. Co.*, L. R. [20
Eq. Cas.] 544; *Buchholz* v. *N. Y., L. E. & W. R. R.
Co.*, 148 N. Y. 640; *W. R. R. Co.* v. *State*, 29 N. J. L. 353.)

The crossing cannot be removed as an obstruction, but the railroad company may be required to perform its duty of restoring the highway. It is not necessary or proper that the commissioners of highways should proceed under section 105 of the Highway Law. (*Town of Windsor* v. *D. & H. C. Co.*, 92 Hun, 127; *Allen* v. *B., R. & P. R. Co.*, 151 N. Y. 434; 3 Elliott on Railroads, § 1105.) The duty to restore is a public duty. The acts of constructing the crossing and restoring the highway are acts in which the public are interested. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302; *Conklin* v. *N. Y., O. & W. R. Co.*, 102 N. Y. 107; *People ex rel.* v. *D. & C. R. R. Co.*, 58 N. Y. 152; *People ex rel.* v. *B. & A. R. R. Co.*, 70 N. Y. 569; *People ex rel.* v. *R. & S. L. R. Co.*, 14 Hun, 371; *People ex rel.* v. *T. & B. R. Co.*, 37 How. Pr. 427; *People* v. *C. & A. R. R. Co.*, 67 Ill. 118; *State ex rel.* v. *R. R. Co.*, 86 Mo. 13.) The relator had the right to apply for the writ. The proceeding may be maintained by any citizen. (*Chittenden* v. *Wurster*, 152 N. Y. 345; *People* v. *Guggenheimer*, 47 App. Div. 9; *Baird* v. *Supervisors*, 138 N. Y. 95; *People ex rel.* v. *Bd. Suprs.*, 56 N. Y. 249; *People ex rel.* v. *Daley*, 37 Hun, 461; *U. P. R. R. Co.* v. *U. S.*, 91 U. S. 343; High's Ex. Leg. Rem. § 431; *People ex rel.* v. *Van Wyck*, 27 Misc. Rep. 439; *People ex rel.* v. *N. Y. S. W. Co.*, 38 App. Div. 413; *People ex rel.* v. *Manning*, 37 App. Div. 141; *Village* v. *People*, 78 Ill. 382.) The court did not err in directing a verdict for plaintiff. (Code Civ. Pro. §§ 2083, 2084; *People ex rel.* v. *Ord. Am. Star*, 21 J. & S. 66; *People ex rel.* v. *Kearney*, 44 App. Div. 449; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302; *D., L. & W. R. R. Co.* v. *City of Buffalo*, 65 Hun, 464; *Town* v. *D. & H. C. Co.*, 92 Hun, 127; *Roberts* v. *C. & N. W. Ry. Co.*, 35 Wis. 679; *Veazie* v. *P. Ry. Co.*, 49 Me. 119; *E. & T. H. Ry. Co.* v. *Carvener*, 113 Ind. 51; *Post* v. *W. S. R. R. Co.*, 123 N. Y. 580.)

*George M. Diven* for defendant, appellant and respondent. Mandamus will not lie where there is an adequate remedy by

law. (*People ex rel.* v. *Crennan*, 141 N. Y. 239; *People ex rel.* v. *Campbell*, 72 N. Y. 496; *People ex rel.* v. *Thompson*, 96 N. Y. 611; *People* v. *Mead*, 24 N. Y. 144; *McCullough* v. *Mayor, etc.*, 23 Wend. 460; *People ex rel.* v. *Green*, 2 T. & C. 62; *People ex rel.* v. *Brown*, 55 N. Y. 180; *People ex rel.* v. *Comptroller*, 77 N. Y. 45; *McMahon* v. *S. A. R. R. Co.*, 75 N. Y. 231.) The court, in awarding the peremptory writ of mandamus, may mold it according to the just rights of all the parties. (Code Civ. Pro. §§ 2067, 2090; *People* v. *Nostrand*, 46 N. Y. 375; *People ex rel.* v. *D. & C. R. R. Co.*, 58 N. Y. 152; *People ex rel.* v. *Wilson*, 119 N. Y. 515; *People ex rel.* v. *Bd. of Police*, 35 Barb. 644; *People ex rel.* v. *Batchellor*, 58 N. Y. 128; *People ex rel.* v. *Woodman*, 16 N. Y. S. R. 715.) The discretion of the court in granting the alternative order was properly exercised. (*People ex rel.* v. *D. & C. R. R. Co.*, 58 N. Y. 153; *People ex rel.* v. *Board of Education of N. Y.*, 158 N. Y. 125; *Husted* v. *Van Ness*, 158 N. Y. 104; *Jacobus* v. *Van Wyck*, 157 N. Y. 495; *People ex rel.* v. *Lord*, 157 N. Y. 408.)

BARTLETT, J. The trial judge directed the jury to find a verdict that the defendant had unnecessarily, by the construction of the crossing, impaired the usefulness of the highway.

On this verdict an order was entered directing that a peremptory writ of mandamus issue, commanding, in substance, the defendant to restore the highway, at the point of crossing, to such condition as will not impair its usefulness by changing the abutments of the bridge so that they shall run parallel with the highway, or, by purchasing lands, change the course of the highway according to a map to which reference is made.

As this crossing was originally constructed, a traveler upon the highway, approaching from either direction, had a clear view between the abutments of the bridge.

At the new crossing this view was greatly impaired, and from some standpoints destroyed. The result was danger of

1900.]    People ex rel. Bacon *v*. N. C. Ry. Co.    295

N. Y. Rep.]    Opinion of the Court, per Bartlett, J.

collisions between teams approaching each other from opposite directions. The record discloses a number of such accidents.

The trial judge, in his opinion, after having visited the *locus in quo*, by consent of the parties, states: "I took with me, at my own expense, a surveyor, who was in no way connected with either party to this suit. A map has been by him prepared which shows the existing line of the road and the highway, and also shows in red lines a changed or proposed highway, which would approach this underpass directly and not at an angle. * * * I am convinced that this highway can be substantially restored only by the changing of the abutments of the underpass so that they shall run parallel with the road, or by the changing of the highway so that it shall approach the underpass perpendicularly and not obliquely. After very careful attention and consideration given to the arguments upon both sides, and the claims of the respective parties, I am further convinced that the statute will be complied with by the adoption of either of said methods."

The Appellate Division affirmed, without opinion, the order directing the peremptory writ of mandamus to issue. Cross-appeals have been taken from the order of affirmance.

The relator insists that while it was proper for the trial court to order the abutments of the new bridge to be changed so as to run parallel with the highway, it had no jurisdiction, in this proceeding, to change the course of the highway in the manner indicated, which allows the encroachments to remain therein permanently.

The defendant appeals from the entire order, insisting, *first*, that its preliminary motion to quash or dismiss the alternative writ should have been granted; *second*, that the order should be reversed on the merits and on exceptions taken at the trial. The learned counsel for defendant stated, on the argument, that if this court affirmed the order of the Appellate Division he waived the motion to quash, but if the order was to be modified so as to compel the defendant to place the bridge abutment parallel with the highway, the motion was to stand.

As we have reached the conclusion that the trial court was without power to change the highway as indicated, we will first consider the motion to quash the alternative writ. Four grounds are relied upon in support of the motion.

The first and third grounds are to the effect that the affidavit on which the alternative writ was granted is defective, in that it fails to show that the defendant had not been served with a notice by the commissioner of highways, as required by the Highway Law (§ 105), stating that an obstruction or an encroachment had been placed in the highway, specifying the location thereof and directing the defendant to remove the same within a specified time. Also, that the proceeding is not brought in the name of the town of Veteran, as provided by sections 15 and 105 of the Highway Law and section 182 of the Town Law.

It is a sufficient answer to these grounds of motion to point out that while towns may compel the removal of obstructions of and encroachments upon the highway under the provisions of law above cited, the proceeding at bar is entirely independent of that remedy, and is based upon certain provisions of the Railroad Law that will be referred to in detail later when considering this appeal on the merits. The relator, as a private citizen, instituted this proceeding in the name of the People, for the public benefit.

The second ground is based on the well-settled rule that mandamus will not lie where there is an adequate remedy at law.

The defendant rested under the public duty as provided by the Railroad Law (§ 11) to restore the highway " to its former state, or to such state as not to have unnecessarily impaired its usefulness."

In this proceeding the defendant is charged to be in violation of that duty, and its performance is properly sought to be enforced by the peremptory writ of mandamus.

When a railroad crosses one of the highways of the state, as in this instance, where travel, both for pleasure and on business, is very heavy, the People are directly interested in

the enforcement of the legislative command that the usefulness of the highway shall not be unnecessarily impaired. (*Allen* v. *Buffalo, Rochester & P. Ry. Co.*, 151 N. Y. 434; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302.)

The last ground in support of the motion is to the effect that the Elmira & Lake Ontario Railroad Company, mentioned in the affidavit on which the alternative writ was granted, as the owner of the railroad in question, was a necessary party to this proceeding.

It is conceded that the defendant, under contracts with the corporation referred to, has been in full possession and control of the railroad, operating the same since 1886, furnishing all the necessary rolling stock for the purpose. It is also conceded that the defendant constructed the bridge and crossing of which complaint is made. The corporation that erected the encroachment in the highway can be compelled to remove it. The contract relations existing between the defendant and the Elmira & Lake Ontario Railroad Company are unimportant. The People may deal with the corporation found in full possession and operation of the railroad.

The defendant has also waived this alleged defect of parties.

The affidavit on which the alternative writ was issued, sets forth the ownership of the road by the Elmira & Lake Ontario Railroad Company and its lease or contract with the defendant. The defect of parties, if any existed, appeared on the face of the proceedings, and objection should have been taken by demurrer. The Code of Civil Procedure provides that a demurrer may be taken in a mandamus proceeding in a case where a defendant may demur to a complaint (§ 2076), so that the general provisions as to demurrer apply (§ 488, sub. 6).

The motion to quash, or dismiss, the alternative writ was properly denied.

In discussing the case on the merits we will first consider the appeal of the relator. It is urged by the relator that the order appealed from permits the crossing of the highway by defendant's railroad to be located thirty-five feet westerly of its original line, and allows the defendant to construct or con-

38

tinue within the traveled portion of the highway, substantial stone abutments permanent in their nature.

It is undisputed that the defendant changed its line thirty-five feet to the westward and crossed the highway at a new point and in a different manner without legal authority.

An informal talk with the highway commissioner of the town of Veteran, who had no authority in the premises, and who disputes the greater part of the conversation, was without effect, if considered proved as testified to by defendant's witnesses.

The Railroad Law (§ 11), among other things, provides that no railroad corporation shall construct its road " across, upon or along any highway in any town or street in any incorporated village, without the order of the Supreme Court of the district in which such highway or street is situated, made at a Special Term thereof, after at least ten days' written notice of the intention to make application for such order shall have been given to the commissioners of highways of such town, or board of trustees of the village in which said street or highway is situated."

We are of opinion that this change of location and the point and method of crossing the highway cannot be regarded as a rebuilding of the old bridge, but is to be treated as an original crossing, which could only be accomplished by complying with the statute just quoted. If two permanent stone abutments were to be projected into the traveled portion of the highway, one from either side, encroaching eight feet or more, the town authorities were entitled to their day in court under this statute.

When a railroad company relies upon a legislative act as justification for the occupation of a public highway, with its piers and abutments, it must show that the statute authorized in express terms, or by clear and unquestionable implication, the doing of the very acts complained of, or that the statute was imperative and could not be executed without causing a nuisance. (*D., L. & W. R. R. Co.* v. *City of Buffalo*, 158 N. Y. 266, 273.)

1900.]     People ex rel. Bacon *v.* N. C. Ry. Co.     299

N. Y. Rep.]     Opinion of the Court, per Bartlett, J.

The defendant proceeded without warrant of law, and its structure was a public nuisance in the highway.

This is necessarily recognized as the situation by the trial court, when it directed the defendant to place its abutments parallel with the highway, or leave them therein, but change the course of the highway so as to reduce the danger of accident by a direct approach rather than at an angle.

The trial court had no authority to continue these encroachments on the highway, as both the act and method of crossing were illegal.

The defendant's argument assumes that it was in the proper exercise of its legal rights when crossing the highway at the point where the new bridge was erected, and, resting on that assumption, seeks to justify the portion of the order which allows the obstructions to remain in the highway subject to a change of route of the latter. It is argued by defendant that a bridge with cross beams at right angles with the line of the railroad is safer and " better railroading " than a " skew bridge," and justifies the placing of two abutments that encroach upon the highway eight feet or more each.

It is also argued that notwithstanding this encroachment the highway was restored " to its former state, or to such state as not to have unnecessarily impaired its usefulness," as the statute requires.

The defendant's civil engineer, under cross-examination, admitted that a " skew bridge " could be made safe, but that it was more expensive. This was shown in the proofs to be due to the fact that the cross beams are longer, running at an angle, and consequently have to be heavier.

The proposed change in the route of the highway is claimed by the defendant to be authorized by both statute and authority.

The statute relied upon is the Railroad Law (§ 11), which provides, in part, as follows: "Every railroad corporation which shall build its road along, across or upon any  *   *   *  highway  *   *   *  which the route of its road shall intersect or touch, shall restore the  *   *   *  highway  *   *   *

thus intersected or touched, to its former state, or to such state as not to have unnecessarily impaired its usefulness, and any such highway  *  *  *  may be carried by it, under or over its track as may be found most expedient.

"Where an embankment or cutting shall make a change in the line of such highway  *  *  *  desirable, with a view to a more easy ascent or descent, it may construct such highway  *  *  *  on such new line as its directors may select, and may take additional lands therefor by condemnation if necessary."

This last provision quoted, providing for taking additional lands, is confined to the situation where the existence of an embankment or cutting makes a change of grade in the highway desirable. This court so held in a recent case. (*Buchholz v. N. Y., L. Erie & Western R. R. Co.*, 148 N. Y. 640.) Chief Judge Andrews, in referring to this provision (p. 644), said : "The provision last cited is the only one in the act which authorizes a railroad company to change the line of a highway, and, without considering whether the authority conferred by this provision may be exercised independently of the local authorities having the charge of highways, it is sufficient to say that the provision has no application in this case. The change in Main street was not and could not have been made under the authority of this provision, since no embankment or cutting existed at the grade crossing."

This provision is equally inapplicable to the case before us, as no change of the highway grade was involved.

It, therefore, follows that if there is any justification for this change in the route of the highway and taking additional land therefor, it must be found in the provision of section 11 first above cited. This is in brief a provision that where a railroad crosses a highway the company shall restore it "to its former state, or to such a state as not to have unnecessarily impaired its usefulness," and the highway may be carried under or over the track.

There is no suggestion here of a power to change the route of the highway or to acquire additional lands. There is,

therefore, no statutory authority for the change of route and the condemnation of land for the purpose.

Passing to the question of authority, the defendant cites *People ex rel. Green* v. *D. & C. R. R. Co.* (58 N. Y. 152) as in point. In that case the track of the company ran along and upon the highway.

At page 164 Judge Folger says: "Railroad companies are authorized to construct their tracks *along* or *upon* any highway which the route thereof shall intersect or touch.

"They are required to restore the highway to its former state, or to such state as not unnecessarily to have impaired its usefulness (Laws of 1850, chap. 140, p. 22, § 24).

"It is manifest that if the track is laid along or upon the highway, it must itself be removed away from the track, or its usefulness will be impaired.   *   *   *

"It may be that the removal or change cannot be made without the taking of other lands on to which it shall be removed. Hence the acquisition of that land is required for the purposes of the incorporation of the company (Id. § 13, p. 215); and is necessary for the construction, maintenance and accommodation of its railroad (Id. § 28, sub. 3, p. 224)."

It thus appears that, in the case cited, the railroad track ran along and upon the highway; that the removal of the highway a proper distance from the track was essential if its usefulness was not to be unnecessarily impaired; that the land taken was for the purposes of the incorporation, and was necessary for the construction of the railroad. The case has no application to the one before us.

The defendant is met at the threshold of this case with the fact that the removal of the railroad track thirty-five feet to the westward, and the crossing of the highway at another point, and by a different method of constructing the abutments and bridge, was without application to the court, under the statute already cited, and illegal *ab initio.*

If the defendant could make the change, to which reference has been made, without the order of the court, it might have just as well removed its route and crossing thirty-five hundred

feet to the westward instead of thirty-five feet, if it had served its purpose so to do.

The attitude of the People as to this point seems to be that of insisting upon it unless the relief is limited to placing the bridge abutment parallel with the highway.

We thus reach the vital question whether it is competent for the court, in this proceeding, the highway commissioner of the town of Veteran having been deprived of his day in court, as accorded him by statute, to make permanent an encroachment of stone abutments upon the highway of sixteen feet five inches in the aggregate, provided the route of the highway is changed by acquiring additional land so that the traveler may pass in safety, over a straight course, between these projecting points of stone.

These encroaching abutments are illegal, a public nuisance, and the trial court was without power to perpetuate them. We have been pointed to no statute or case authorizing the action of the court below.

The defendant should be compelled to place its bridge abutments parallel with the highway, as they existed at another location from 1849 to 1895.

The defendant, in further support of its appeal, insists that errors were committed upon the trial which require a reversal of the order:

(1) That the court erred in instructing the jury to find a verdict that the construction erected by the defendant had unnecessarily impaired the usefulness of the highway.

A perusal of the record satisfies us that the encroachment on the highway is practically undisputed, is a public nuisance, and that a verdict to the contrary would be set aside as against the evidence.

(2) That the court erred as to certain rulings on questions of evidence.

We have examined all the exceptions taken on the trial and find no reversible error.

(3) That the court below exercised its discretion in directing the manner in which the defendant should perform its duty.

We hold that the modification of the order of the trial court is made necessary by reason of legal errors duly presented by the record, and *no review is attempted of the discretion of the court below.*

The order of the trial court should be modified by striking therefrom the words, " or by purchasing sufficient land so as to lay out the highway as indicated upon the defendant's map, Exhibit 'A' of December 31st, 1897, upon which map the parallel red lines indicate the locations in which the said railway company must construct stone walls not to exceed three feet in height, or some barrier of like height."

The order of the Appellate Division is modified so as to conform to the above modification of the order of the trial court. As so modified, both of said orders are affirmed, with costs to the relator.

PARKER, Ch. J., VANN, CULLEN and WERNER, JJ., concur; O'BRIEN, J., not voting; LANDON, J., not sitting.

Ordered accordingly.