THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* THE DELAWARE AND HUDSON COMPANY, Respondent.

Highways — railroads — public service commission — construction of railroad switch track across a public highway — when consent of commissioner of highways to such construction not necessary — power of public service commission to authorize such construction.

The defendant is a railroad corporation operating a double-track steam railroad. This action is brought to have adjudged that certain tracks across a public highway described in the complaint constitute a purpresture, a public nuisance, and a continuing trespass and that they obstruct and interfere with the rights of the public in said highway. Several years ago defendant constructed a number of switch tracks across the highway without having obtained permission so to do from any state or other official. Thereafter, on the petition and application of the defendant and the consent of the town superintendent of highways of the town in which the tracks are situated, the Supreme Court made an order pursuant to the provision of section 21 of the Railroad Law (Cons. Laws, ch. 49) granting permission to the defendant to construct such tracks on condition that the same should be protected by proper gates. Still later, but prior to the commencement of this action, upon a petition of the defendant, the public service commission, second district, by an order which recites the filing of said

petition and that such tracks were constructed prior to the entry of any permissive order by the commission, granted leave to construct certain switch tracks across the highway and to exercise such franchise under section 53 of the Public Service Commissions Law upon the condition that defendant " shall actually have made application to this commission in due form of law under section 91 of the Railroad Law, for the elimination of the grade crossing now existing, and for the changing of the same to a crossing above the grade of the tracks of said company." The defendant filed its written consent to such order and within sixty days after the order was granted in accordance with the requirements thereof filed its petition with the public service commission asking that proceedings be had pursuant to the provision of section 91 of the Railroad Law to eliminate said grade crossings. It was found by the trial court that " No action has been taken by said commission on said application. Its failure to act thereon has not resulted from any failure on the part of the defendant to secure action thereon by such commission but has resulted from the failure of the legislature to appropriate moneys for grade crossing eliminations, in the absence of which said commission has been unable to take action thereon." *Held,* that at the time this action was commenced, amendments to section 146 of the Highway Law (L. 1913, ch. 803) had taken effect and the statutory provision providing for the consent of the commissioner of highways to the construction of railroads on certain highways had been omitted therefrom. Authority to consent to the crossing of the highway in question is and at all the times mentioned herein was vested in the public service commission. (Public Service Commissions Law, § 53.) That the switch tracks were not at the time of the commencement of this action, or at the trial thereof or the judgment herein, maintained across the highway without legal right.

*People* v. *Delaware & Hudson Co.*, 183 App. Div. 149, affirmed.

(Argued January 22, 1920; decided April 13, 1920.)

APPEAL from a judgment, entered October 16, 1918, upon an order of the Appellate Division of the Supreme Court in the third judicial department, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury and directing a dismissal of the complaint. This action is brought to have adjudged that certain tracks across a public highway described in the complaint constitute a purpresture, a public nuisance and a continuing trespass and that they

obstruct and interfere with the rights of the public in said highway, and to compel the defendant forthwith at its expense to remove said tracks and restore the highway to the condition in which it was prior to its construction of said tracks. The facts, so far as material, are stated in the opinion.

*Charles D. Newton, Attorney-General (Jerome L. Cheney and Wilber W. Chambers* of counsel), for appellant. Under the provisions of section 146 of the Highway Law the defendant could not lawfully construct and maintain these tracks across the Shakers-Watervliet road without obtaining the consent of the highway commission. (L. 1902, ch. 379, § 146; L. 1907, ch. 717; *Baker* v. *Schofield,* 243 U. S. 114; *Hemmingway* v. *Poucher,* 98 N. Y. 281; *Matter of City of New York,* 162 App. Div. 291; *Matter of School Board of Brooklyn,* 157 N. Y. 566; *Osborne* v. *International Ry. Co.,* 226 N. Y. 421; *People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43.) The construction and maintenance by the defendant of these trespassing tracks across the Shakers-Watervliet highway was unlawful and unauthorized and created a continuous public nuisance. (*People ex rel. Sibney* v. *Gresser,* 205 N. Y. 24; *People ex rel. Bacon* v. *N. C. Ry. Co.,* 164 N. Y. 289; *D., L. & W. R. R. Co.* v. *City of Buffalo,* 158 N. Y. 266.)

*Lewis E. Carr* for respondent. At the time of the commencement of this action, and at all times since, the switch tracks of the respondent crossing the Shakers-Watervliet highway were and have been there with the permission and assent of the public authorities whose assent and permission is required for the purpose of crossing highways at grade. They were and are not unlawfully in and across such highway. (Cons. Laws, ch. 49, § 21; L. 1897, ch. 754; L. 1911, ch. 646; L. 1913, ch. 80.) The trial court erred in rendering the judgment appealed from on the facts proven on the trial of this action, since

such facts made it clear a duly instituted proceeding was pending, undetermined, before the public service commission, for the elimination of the grade crossing of the highway in question over the railroad of the respondent, which included the switch tracks in question, and its jurisdiction to determine that matter was ample and exclusive. (*Matter of N. Y. C. R. R. Co.,* 200 N. Y. 121; *Matter of Terminal Ry. Co.,* 122 App. Div. 59; *Matter of Erie R. R. Co.,* 208 N. Y. 490.)

CHASE, J.    The defendant is a railroad corporation that has among other lines of railroad maintained and operated for many years a double-track steam railroad between the cities of Albany and Cohoes.    At a point in the town of Colonie, Albany county, it crosses a public highway which runs from the city of Watervliet westerly. The crossing is substantially at right angles and at grade.

In 1910, 1911 and 1912 the defendant constructed and put in operation large repair shops on a plot of ground immediately east of its said railroad and south of said highway.    To connect the buildings of said plant with the said double line of tracks it laid and constructed therefrom six switch tracks which crossed said highway at grade immediately east of the double line of tracks and connected the same therewith north of the highway. The defendant did not before laying said switch tracks obtain a consent so to do from any state or other official. Said highway was designated for improvement as shown on the map prepared as stated in chapter 715 of the Laws of 1907.    Subsequently the plans and specifications for said highway were duly approved, and on March 22, 1911, a contract was entered into in behalf of the state with a contractor for the improvement of six and four-tenths miles of said highway from the city of Watervliet westerly, and the contractor entered upon the performance of his work under said contract.    No work under said contract was ever performed on that part of the highway

east of said railroad crossing or for two or three hundred
feet west thereof except preliminary engineering work.
The switch tracks were constructed across said highway
in the year 1911 after the making of said contract and
at the time they were so constructed the contractor was
engaged in grading pursuant to his contract at a point
on said highway, about one thousand feet west of the
railroad crossing. That part of said highway commencing
about two hundred feet west of the railroad crossing and
extending across the same to the city of Watervliet was
eliminated from the contract by action of the state high-
way department which part so eliminated includes the
part where the double line of tracks of the railroad and
said switch tracks cross the same. On the 12th day of
January, 1912, on the petition and application of the
defendant and the consent of the town superintendent
of highways of said town of Colonie the Supreme Court
made an order pursuant to the provisions of section 21
of the Railroad Law (Consolidated Laws, chapter 49)
granting permission to the defendant to construct said
switch tracks and other tracks therein named upon
condition that the defendant would protect the same
by proper gates.

On June 30, 1914, upon a petition of the defendant
dated December 15, 1911, the public service commission,
second district, made an order which recites the filing
of said petition and that " such tracks *having been con-
structed prior to the entry of any permissive order* by this
commission, and a petition having subsequently been
made on behalf of the town of Colonie to compel the
removal of said tracks unless the said Delaware and
Hudson Company should construct an overhead crossing
at the point complained of; and hearings having been
had in respect to both of these matters the two pro-
ceedings having been treated for the purposes of the said
hearing as one proceeding; " and provided

" That the petition of the said Delaware and Hudson

Company for leave to construct certain switch tracks across the above mentioned highways and to exercise such franchise under section 53 of the Public Service Commissions Law of the State of New York, be and the same is hereby granted; this order, however, not to take effect until sixty (60) days from the granting thereof, and then only to take effect in the event that during such period of sixty (60) days the said Delaware and Hudson Company shall actually have made application to this commission in due form of law under section 91 of the Railroad Law, for the elimination of the grade crossing now existing, and for the changing of the same to a crossing above the grade of all the tracks of said company, whereby said Shaker Road will be taken over said tracks above grade; and it is

" Further ordered, that the said town of Colonie, which has appeared in this proceeding as aforesaid, may subsequently make application to this commission for an order rescinding the *permission hereby granted* if such contemplated proceedings under section 91 of the Railroad Law are not prosecuted to a conclusion by the said Delaware and Hudson Company with due and reasonable diligence, or if the said Delaware and Hudson Company shall subsequently depart in any wise from its agreement above recited, as to the manner in which the expense of such overhead crossing, when ordered, shall be borne by the said Delaware and Hudson Company."

The defendant filed its written consent to such order as follows: " That upon the granting of the consent heretofore applied for, stated herein, it will, within sixty days from the granting thereof, make application to the Public Service Commission in due form of law under section 91 of the Railroad Law for the elimination of such grade crossing and changing the same to a crossing above grade of all the tracks of such company, whereby said Shaker road will be taken over said tracks above grade, in which application or in the proceedings thereon

it will consent and stipulate that the Public Service
Commission may apportion the expense of such overhead
crossing between the main tracks of its railroad and the
switch tracks leading therefrom into its shops and yard
*and require said railroad company to bear and pay the entire*
*expense apportioned to said switch tracks,* leaving the
portion of such expense apportioned to the main tracks
of said railroad to be borne and paid in accordance with
the provisions of section 94 of the Railroad Law.    It
further states and declares that it will prosecute such
application for the elimination of said grade crossing
with reasonable diligence."

Within sixty days after the order was granted the
defendant in accordance with the requirements thereof
filed its petition with the public service commission,
second department, dated August 19, 1914, asking that
proceedings be had pursuant to the provision of section
91 of the Railroad Law to eliminate said grade crossings.
It was found by the trial court that " No action has been
taken by said commission on said application.   Its
failure to act thereon has not resulted from any failure
on the part of the defendant to secure action thereon
by such commission but has resulted from the failure
of the legislature to appropriate moneys for grade crossing
eliminations in the absence of which said commission
has been unable to take action thereon."

The rights, privileges, powers and franchises of the
defendant as a railroad corporation were in 1911 subject
among other provisions of statute to the provisions of
sections 21 and 89 to 96 of the Railroad Law (Consolidated
Laws, chapter 49), section 146 of the Highway Law
(Consolidated Laws, chapter 25), and section 53 of the
Public Service Commissions Law (Consolidated Laws,
chapter 48).

Prior to the time when chapter 646 of the Laws of 1911
became a law section 146 of the Highway Law provided
that " No street surface railroad shall be constructed

upon any portion of a state or county highway which has been or may be improved under the provisions of this article, nor shall any person, firm or corporation enter upon or construct any works in or upon any such highway, except upon the approval of, and under such conditions and regulations as may be prescribed by the commission, notwithstanding any consent or franchise granted by the town superintendent or municipal authorities of any town.  *  *  *."

By said chapter of the Laws of 1911 said section was amended so as to include railroads other than street surface railroads. The section was again amended by chapter 80 of the Laws of 1913 by adding after the words "such highway" the words "or construct any overhead or underground crossing thereof or lay or maintain therein drainage, sewer or water pipes underground," and striking out the words "upon the approval of and," so as to limit the authority of the commissioner of highways to prescribing the conditions and regulations upon which a railroad or any works should be constructed, "upon any portion of a state or county highway which has been or may be improved under the provisions of this article."

The amendment also substituted therein the commissioner of highways for the commission, and the words "any town, county or district superintendent" in place of the words "The town superintendent."

Whether the defendant constructed the switch tracks across the highway without first obtaining the consent of the public service commission or other official because as has been suggested of some misunderstanding about the necessity therefor or for some other reason or no reason other than a selfish one, is not of material consequence as the question presented on this appeal must be determined upon the facts as they existed at the time of the commencement of the action and the trial and judgment herein.

This action was not commenced until August 13, 1914. Prior to that time an order had been made at a Special Term of the Supreme Court consenting to said crossing as therein stated and as provided by section 21 of the Railroad Law.  The amendments to section 146 of the Highway Law as stated had all taken effect and the statutory provision providing for the consent of the commissioner of highways to the construction of railroads on certain highways had been omitted therefrom.  Authority to consent to the crossing of the highway in question is and at all the times mentioned herein was vested in the public service commission.  (Public Service Commissions Law, sec. 53.)

At the time of the commencement of the action the highway at the place where the switch tracks were constructed had not been improved as a state or county highway and no contract for its improvement as such then existed.  No conditions or regulations had been prescribed for such switch tracks.  The order of the public service commissions had then been made and entered.

Whether prior to the amendment of the statute in 1913 it was necessary to obtain the consent of the commissioner of highways to a crossing in any case where the highway had not been actually improved as a portion of a state or county highway even if such improvement was contemplated is not now material, but for the reasons stated in the opinion of Justice WOODWARD in the Appellate Division in this case (*People of the State of New York* v. *Delaware & Hudson Co.*, 183 App. Div. 149) we do not think that the claim of the plaintiff that such consent was necessary can be sustained.

In the proceedings in which the order was made by the public service commission consenting to the construction of the switch tracks it had before it the defendant as the petitioner in one proceeding and the town of Colonie and the commissioner of highways of the state

of New York as the petitioners in the other proceeding, and in such consolidated proceedings every material fact now before this court was before the commission and the order was made with full knowledge and consideration thereof. In considering the applications the public service commission had to take into account the fact that the two main tracks of the defendant's railroad had for many years crossed the highway at grade and the further fact of the construction by the defendant of its shops and their location and the necessity for an outlet by rail therefrom. It was practically impossible to carry the switch tracks over the highway by an overhead crossing without at the same time eliminating the crossing at grade of the main tracks of its railroad.

There is no material dispute that the defendant has in good faith complied with every provision of the order. It has also consented to an apportionment of the expense of the charges as provided by the order. Such order was not without precedent. (*Matter of N. Y. C. & H. R. R. R. Co.*, 200 N. Y. 121, 124; *Matter of Erie R. R. Co.*, 208 N. Y. 486, 490.)

The public service commission has ample power to hear and act upon any question relating to said crossing that may arise from new or changed conditions. We do not think that the switch tracks were at the time of the commencement of this action, or at the trial thereof or the judgment herein, maintained across the highway without legal right.

The judgment of the Appellate Division should be affirmed, with costs.

Elkus, J. (dissenting). The question involved is as to the legality of the existence of railroad tracks and switches placed across a highway by the defendant without prior compliance with any of the legal requirements of the law at the time of such pre-emption. Certain of these formalities have since been complied with or

claimed to be eliminated from the statutes by subsequent enactment. This is a case where strict construction of the law should be applied against the party who has been guilty of initial disregard of the law.

Judge BARTLETT correctly characterized this defendant and its conduct when he said: "The defendant proceeded without warrant of law, and its structure was a public nuisance in the highway." (*People ex rel. Bacon* v. *No. Central Ry. Co.,* 164 N. Y. 289, 299.)

As long ago as 1907 the highway involved was planned by a resolution of the board of supervisors of Albany county. It appears on a map of highways of the state prepared by the state engineer and approved by the legislature in 1907. In March, 1911, a contract was made with a contractor for the improvement of the highway for a distance of six and forty one-hundredths miles and under this contract improvements were completed to a point about two hundred feet west of the railroad. Stakes indicating the grade of the highway were placed along this remaining two hundred feet and the portion not improved practically covered and included what is now the main line of the Delaware and Hudson Company and the switch tracks referred to hereafter.

When the contractor began his work, only two main track lines of the Delaware and Hudson Company were in existence at this point. These had been there for many years. After the work on the contract was under way, the railroad company erected five switch lines. This was done without any authority from any public body or official and without any knowledge or consent on the part of the state or its employees. It was done in a hurry within three or four days, just as the contractor was about to improve the highway crossed. After that had been done, the highway contractor ceased work until the question of the right of the defendant to build and maintain these tracks was determined, and the state,

19

in order to regularly terminate its liability to the contractor, canceled the contract for the uncompleted portion of the road covering the tracks in question.

At the time of the laying out of the highway and at the time of the construction of the switch tracks, section 146 of the Highway Law, chapter 379 of the Laws of 1902, provided that no street surface railroad shall be constructed upon a portion of a highway which portion has been or may hereafter be improved except " upon the approval of," etc., the state engineer and surveyor.

After several immaterial amendments, this law was amended by chapter 646 of the Laws of 1911, by extending its application to all railroads and finally, by chapter 80 of the Laws of 1913, the section was again amended to read as it does now, the principal change being the omission of the words " upon the approval of," retaining, however, in the statute the requirement that no railroad should be constructed across an improved highway " except upon such conditions and regulations as may be prescribed by the commissioner of highways." While the words " approval of the erection " were omitted, yet it was essential to have some action by the highway commissioner. This amendment to the law was adopted after the pre-emption had been made of the highway by the defendant, but before this action was commenced.

On January 12, 1912, some time after the tracks and switches were laid, the railroad company obtained permission from a justice of the Supreme Court to construct the switch tracks in question, the town superintendent of highways also consenting thereto. This permission was granted pursuant to the provisions of section 21 of the Railroad Law.

On June 30, 1914, after the tracks had been in use for years, upon the application of the defendant under section 53 of the Public Service Commissions Law, an order was made by the public service commission of the second district which recites that a petition had been

presented by the defendant " for permission *to construct*
certain switch tracks across the Shaker Road," etc., and
to exercise such franchise under section 53 of the
Public Service Commissions Law, and that such tracks
having been constructed prior to the entry of any per-
missive order by this Commission, and a petition having
subsequently been made on behalf of the town of Colonie
to compel the removal of the same, unless the defendant
should construct an overhead crossing, the two pro-
ceedings having been treated, for the purposes of hearings
as one, and the defendant stating that, upon the granting
of the consent applied for, it would, within sixty days,
make application under section 91 of the Railroad Law
for the elimination of the existing grade crossing and for
the change of same to a crossing above grade, and that
the public service commission might apportion the
expense of such overhead crossing, and that the railroad
company might be required to pay the entire expense
apportioned to such switch tracks. The order then
stated that, It appears to the Commission that, in
taking this position with respect to the manner in which
an overhead crossing shall be paid for and in agreeing
to diligently prosecute the necessary proceedings for the
elimination of the existing grade crossing, the defendant
is entitled to the granting of its petition, which said order,
however, *shall be conditioned upon the carrying out by the
defendant* of the terms and conditions in its declaration
of intention, and then ordered that the petition of the
defendant " *for leave to construct certain switch tracks across
the above mentioned highways and to exercise such franchise
under section 53 of the Public Service Commissions Law* "
be granted. " This order, however, not to take effect
until sixty (60) days from the granting thereof and then
only if the Delaware and Hudson Company shall have
actually made application to this commission, in due form
of law, under section 91 of the Railroad Law, for the
elimination of the grade crossing now existing."

On August 21, 1914, the defendant filed its application under section 91 for the elimination of the grade crossing of the said highway, but no action has been taken by the said commission on said application. This failure to act is because of the omission of the legislature to appropriate moneys for grade crossing eliminations, in the absence of which the commission has been unable to take action thereon.

Section 53 of the Public Service Commissions Law, which, it is claimed, authorizes the existence of these tracks provides that no railroad corporation shall " *begin the construction* of a railroad or any extension thereof " without having *first* obtained the permission and approval of the proper (*public service*) commission.

Assuming, but not deciding, that the provisions of the Highway Law, section 146, do not apply to the facts in this case as the Appellate Division majority opinion contends, it appears that this defendant did not apply for permission to construct the tracks in question before it actually did so; that it never obtained authority from the public service commission or anybody to construct these tracks, but that it constructed them without authority of law and, therefore, was and always has been and is now a trespasser upon a public highway of the state of New York. It is true it endeavored to obtain what it terms a consent to the construction of the tracks *after* they were constructed, but the order of the public service commission was not made before the defendant began the construction of its tracks, but long after they were erected and this order, as pointed out, grants a petition for leave *to construct* certain switch tracks and that these are to be constructed, provided application shall be made under section 91 for the elimination of the grade crossings and the conditions imposed complied with. We thus have this situation: The defendant knew that if it applied to the public service commission or to any lawful authority before it began the construction

of the switch tracks in question, it would be required at its own expense or at large expense to it to build the tracks other than at grade.  It chose not to do this, but deliberately committed a trespass and constructed a public nuisance.  After the trespass and public nuisance had been in existence for years, the defendant applied to the public service commission for leave to construct tracks already in existence and which, the order recites, were constructed without permission.  The jurisdiction of an administrative body such as the public service commission is limited and depends upon exact compliance with the conditions of the statutes granting it the power to decide.  (*Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.*, 227 U. S. at 91 and 93; *Yick Wo* v. *Hopkins*, 118 U. S. 356–370.)  The jurisdiction to grant permission and approve a proposed construction under section 53 of the Public Service Commissions Law *before* same is begun  does not imply or confer jurisdiction to approve or ratify a construction *begun* or *completed before* the *permission* or approval of the commission *is sought.*

Therefore, while it was proper for the railroad to seek permission to construct switches crossing the highway in question and proper for the public service commission to grant such permission upon condition that application should be made to place such switch tracks above grade this order. of the public service commission is not *retro-active* and does not authorize the present grade switch tracks constructed by the railroad upon its own initiative and without prior application to the commission.  Nor would the commission have *jurisdiction* to approve or ratify a construction begun in disregard of its authority as set forth in section 53 of the Public Service Commissions Law of this state.  (*People ex rel. South Shore Traction Co.* v. *Willcox*, 196 N. Y. 212 at 217.)  As to the existing switch tracks the railroad was a trespasser.

When it obtained the alleged consent, the defendant stated to the public service commission that it conceded

it must apply to the state highway commissioner for a further consent and it now claims, and the Appellate Division sustains that claim, that such consent is unnecessary. Whether that be so or not, the alleged consent of the public service commission was a consent to authorize the future building of tracks only, and those tracks were to be built if the defendant stipulated to apply to the public service commission to place the tracks above or below grade, and complied with the conditions imposed with reference thereto.

At that time it must be assumed to be known that this condition was practically nugatory, because the legislature had not and has not yet appropriated funds in order to carry out the provisions of the act, and so the defendant remains a trespasser without any authority for the existence of the tracks, having succeeded by deliberately evading the law in accomplishing its purpose of constructing the switch tracks upon grade, thus saving the expense of placing them above or below grade.

It is now five years that these switch tracks have remained in use. The purpose of requiring tracks of this kind to be above or below grade is to prevent loss of life and injury to people traveling upon the highways. It may be that during these years people by the score have been killed or injured by reason of the defendant's willful disobedience of the law. If the defendant had applied to the public service commission *before* it constructed its tracks, in compliance with section 53 of the Public Service Commissions Law, its petition would have been granted, if at all, only on conditions which would have to be complied with *before or at the time* the tracks were constructed and not at some indefinite time thereafter, thus practically nullifying the conditions.

The defendant disregarded the plain principles of law and seeks to defend its action by a strained construction of the statutes, and also by a repudiation of its express promise to comply with the provisions of law favoring

the plaintiff's contention. This certainly is disrespect of the law itself.

To sustain the defendant's contentions will breed disrespect for the law and its administration.

When the counsel for the defendant appeared before the public service commission, applying for its consent, he said: " I concede such an order " (*the one applied for*) " as that would not give us the right to maintain those tracks across that road at grade without we later get the consent of the Highway Commissioner. I concede that to be a fact."

Upon the argument, counsel admitted making this statement and that he supposed it was necessary for his client to obtain such consent at that time, but now says he was mistaken and that no such consent is necessary.

It is clear that the defendant, through its counsel at this hearing before the public service commission, took a position which undoubtedly had its effect upon that body. Now, before this court, he says he was mistaken.

At Trial Term, the plaintiff obtained a judgment upon the ground that section 146 of the Highway Law conferred upon the commissioner of highways jurisdiction in the premises and that his prior consent to the construction of the tracks was necessary. The Appellate Division, by a majority decision, reversed this judgment upon the ground that the public service commission had jurisdiction and that the commissioner of highways only had jurisdiction where the highway was improved and that the highway in question was not improved, and, further, that, even if the highway was deemed to be an improved one, the consent of the local authorities to encroachment of the highways gives that right primarily, but, because the highway has been improved, such encroachment must be made under the conditions and regulations prescribed by the highway commissioner, and that the action of the highway commissioner is not a consent to an encroachment, but an administrative direction as to how it shall

be done and it shall not be done in such a manner as to unnecessarily interfere with the use of the highway.

The highway statute in force at the time of the commencement of the action distinctly provides that such construction shall be under such regulations and conditions as may be imposed by the state commissioner of highways.

In other words, it presupposes the erection of tracks at grade to be subject to the approval of the commissioner of highways. No action to that end by the commissioner has been had, but on the contrary, the complaint in this very action shows a violent and active dissent on the part of the state and its commissioner of highways to the action of the railroad company.

The judgment and order of the Appellate Division appealed from should be reversed and that of the Trial Term affirmed.

HISCOCK, Ch. J., McLAUGHLIN and CRANE, JJ., concur with CHASE, J., and CARDOZO, J., concurs in result; HOGAN, J., concurs with ELKUS, J.

Judgment affirmed.