THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE DELAWARE AND HUDSON COMPANY, Appellant.

Third Department, May 8, 1918.

**Highways — construction of railroad tracks across improved State highway — consent of Highway Commissioner to such construction not necessary — jurisdiction of Public Service Commission to authorize such construction — Highway Law, section 146, construed.**

The consent of the State Commissioner of Highways is not necessary to the legal construction and maintenance of railroad switch tracks across an improved State highway, and where the construction of said tracks has been authorized by the Public Service Commissioners and the question of the elimination of the grade crossing is pending before it, the railroad company will not be compelled to remove the tracks because they were constructed without the consent of the Highway Commissioner.

Section 146 of the Highway Law, providing that no railroad shall be constructed upon a State or county highway which has been or may be improved except under such conditions and regulations as may be prescribed by the Commissioner of Highways, does not give the State Commissioner power to interfere with the consent to the construction of railroad tracks across such highways given by the Public Service Commission. Under said section the Commissioner of Highways may only determine the conditions and regulations upon which individuals, firms

or corporations may enter upon the improved highways of the State under local consents or franchises.

Moreover, said section of the Highway Law relates only to highways which have been actually improved and does not extend to roads which may be improved under its provisions some time in the future.

APPEAL by the defendant from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 7th day of November, 1917, upon the decision of the court after a trial before the court, a jury having been waived.

*Lewis E. Carr,* for the appellant.

*Merton E. Lewis,* Attorney-General [*Wilber W. Chambers, Deputy Attorney-General* of counsel], for the respondent.

WOODWARD, J.:

The complaint alleges that the defendant, a domestic railroad corporation, operates a part of its railroad system between the city of Albany and the city of Cohoes, both in the county of Albany, and that between said cities, and near the city of Watervliet, said railroad crosses a public highway, known as the Shakers-Watervliet County Highway, No. 879, in the town of Colonie; that the defendant, at dates unknown to the plaintiff, has erected upon and across said highway seven railroad tracks in addition to the two main line tracks; that these tracks are laid at grade; that this highway is a public highway, and that heretofore and on or about the 22d day of March, 1911, the State entered into a contract with John E. Consalus for the improvement of said highway from the corners about one mile west of Shakers east through the Shakers settlement to the city line of Watervliet, a distance of six and four-tenths miles in the town of Colonie, and that this contract was subsequently sublet to one John W. Flinn; that work was begun upon said highway, and that it was subsequent to the beginning of said work that the defendant constructed the additional tracks across said highway; that said additional tracks were constructed across said highway " without any right or authority," and that said tracks " were built across said highway without any consent or authority so to do by

the Commissioner of Highways of the State of New York," and that they were likewise constructed without permission or consent of the Public Service Commission of the Second District of the State of New York, in whose territory they were located. It is then alleged that the tracks so constructed and maintained constituted a purpresture and a public nuisance, and the relief asked was the removal of said tracks and other things not material to this appeal.

The answer of the defendant admits the jurisdictional matters, and that the tracks were built across the highway without the express consent or authority so to do by the Commissioner of Highways of the State of New York, and alleges that the consent of such official is not required by law for the construction and operation of said switch tracks over and upon said highway, and denies knowledge or information sufficient to form a belief as to the other matters alleged in the complaint.

The defendant affirmatively pleads that it made an application to the Supreme Court, under the provisions of section 21 of the Railroad Law (Consol. Laws, chap. 49; Laws of 1910, chap. 481),* believing that the highway was a town highway within the town of Colonie, and that the court duly granted an order permitting such occupation. It appears to be conceded, however, that the order is of no force or effect, and its only bearing is upon the good faith of the defendant in occupying the highway. The defendant likewise pleads that it subsequently made further application to the Public Service Commission, Second District, under the provisions of section 53 of the Public Service Commissions Law (Consol. Laws, chap. 48; Laws of 1910, chap. 480) for the permission and approval of said Commission for the construction of said switch tracks across said highway and to exercise its franchise thereon; that such proceedings were had that the said Commission granted the consent by an order made on the 30th day of June, 1914, such order being conditioned upon the defendant making an application under the provisions of section 91 of the Railroad Law for the

---

* Since amd. by Laws of 1913, chap. 743, and Laws of 1916, chap. 109. — [REP.

elimination of the grade crossing at the point in question within sixty days of the granting of said order. (See Laws of 1914, chap. 378, amdg. Railroad Law, § 91.) It is then alleged that the defendant duly made such application for the grade elimination, and that the matter is now pending before said Commission. It is further alleged that the contract, under which the said highway was being improved, has been modified so that it does not now include that part of the highway upon which the defendant's switch tracks are located, and the evidence seems to bear out this statement.

The real question appearing upon this appeal is whether the consent of the State Commissioner of Highways was necessary to the legal construction and maintenance of these additional switch tracks, necessary to the defendant in reaching its roundhouses and in the practical operation of its railroad in this highly congested locality. It is not seriously questioned that the defendant has in good faith made an application to the Public Service Commission for permission to maintain and operate these switch tracks, and that it has made an application for the elimination of the grade crossing, both for its switch tracks and for its two main line tracks, contracting to pay all of the expense connected with the change of these switch tracks and being legally liable for its portion of the cost as to the main line tracks, and the only question of importance here is the true construction of section 146 of the Highway Law. If the consent of the State Highway Commissioner is contemplated and required by that section then the judgment here on appeal must be affirmed; otherwise, it must be reversed.

Section 146 of the Highway Law, in so far as it has any relation to this controversy, provides that "No street surface or other railroad shall be constructed upon any portion of a State or county highway which has been or may be improved under the provisions of this article, nor shall any person, firm or corporation enter upon or construct any works in or upon any such highway, or construct any overhead or underground crossing thereof, or lay or maintain therein drainage, sewer or water pipes underground, except under such conditions and regulations as may be prescribed by the Commissioner of Highways, notwithstanding any consent or franchise granted by any town, county or district superintendent, or by the

municipal authorities of any town." (See Consol. Laws, chap. 25 [Laws of 1909, chap. 30], § 146, as amd. by Laws of 1911, chap. 646, and Laws of 1913, chap. 80.)

As we read this provision of the Highway Law it is confined to such "portion of a State or county highway" as "has been or may be improved under the provisions of this article." It is the fact of actual improvement of a portion of a State or county highway which gives the Commissioner any powers in the cases mentioned, and the language of the statute is not to be extended to those portions of a State or county highway which may, sometime in the future, be improved under its provisions. It is the physical improvement of the highway under the provisions of the statute, and not the potentiality of such improvement, which gives jurisdiction to the Commissioner of Highways. This is made clear by the provision of the same section that the fines of from $100 to $1,000 per day are to be "recovered by the Commissioner of Highways and paid to the State Treasurer to the credit of the fund for the maintenance and repair of State and county highways." When the highway has in fact been improved then the State has an interest in its maintenance in the condition in which it has been placed through the expenditure of public funds, and so it is provided that no railroad shall be constructed "upon any portion of a State or county highway which has been" in the past, or may be in the future "improved under the provisions of this article * * * except under such conditions and regulations as may be prescribed by the Commissioner of Highways, notwithstanding any consent or franchise granted by any town, county or district superintendent, or by the municipal authorities of any town." By the inclusion of the town, county or district superintendent, or the municipal authorities of any town, the Legislature clearly excluded the consent of the Public Service Commission, under the maxim of *expressio unius est exclusio alterius.* (*Aultman & Taylor Co.* v. *Syme,* 163 N. Y. 54, 57.) It could not have been intended that the Commissioner of Highways was to have the power to interfere with that other great system of public highways, the railroads of the State, which had been carefully provided for in the Railroad Law and the Public Service Commissions Law. He

is given all the authority necessary to conserve the improved highways of the State and counties against the consents or franchises granted by any town, county or district superintendent, or the municipal authorities of any town, but he is not empowered to interfere with the consent given by the Public Service Commission having jurisdiction of the particular railroad. That is a matter involving the vital interests of the State at large, and the powers necessary and proper to be exercised in connection with such railroads has been vested in the Public Service Commission in connection with the provisions of the Railroad Law, and has not been taken away by the Highway Law. There is plenty of room for the operation of all three of these statutes, and properly construed they do not conflict. The Commissioner of Highways may very properly be called upon to determine the conditions and regulations upon which individuals, firms or corporations may enter upon the improved highways of the State under local consents or franchises, but to empower him to interfere with the construction of a railroad, or the necessary switches or other facilities of a railroad, where the encroachment is merely incidental, and where such encroachment is authorized by the Railroad Law and the Public Service Commission, is quite another thing. If such a power had been contemplated by the Legislature it is fair to assume that it would have been clearly expressed; that language would not have been used which, under recognized rules of construction, excluded the power.

But, if we should be in error in this construction, we are still of the opinion that the consent of the Highway Commissioner is not necessary to the lawful construction of these switches, authorized by section 8, subdivision 4, and by section 17 of the Railroad Law,* subject to the provisions of section 53 of the Public Service Commissions Law. It is to be observed that section 146 of the Highway Law does not require the consent of the Commissioner of Highways even in the matter of local consents and franchises; it merely provides that the encroachments mentioned shall not be made " except under such conditions and regulations as may be prescribed by the Com-

---

* See, also, Laws of 1913, chap. 284, amdg. Railroad Law, § 17.— [Rep.

missioner of Highways." The power to prescribe conditions and regulations presupposes the existence of something to be conditioned or regulated. It assumes, in this case, that the consent of the local authorities gives the right to encroach upon the highway primarily, but, by reason of the fact that the highway has been improved by the expenditure of State moneys, it is provided that such encroachment must be made under the conditions and regulations prescribed by the Commissioner of Highways. This is not a consent to the encroachment; it is a direction how it shall be done, and the purpose of this power, of course, is to require it to be done in such a manner as not to unnecessarily interfere with the highway efficiency and safety. It is not a power to be withheld at the discretion of the Commissioner of Highways, but one to be exercised in good faith to permit the consents and franchises to operate with the least inconvenience and loss to the public. (*Thousand Island Park Association* v. *Tucker,* 173 N. Y. 203, 210; *City of Rochester* v. *West,* 29 App. Div. 125, 130.) " The term *regulations* implies a rule for a general course of action. It does not apply to a case in which specific instructions are to be given, applicable to that case alone, as here, where only one thing was to be done." (*Christopher* v. *Mayor, etc.,* 13 Barb. 567, 573.) While the provision of the statute here under consideration uses the words " conditions and regulations," we are of the opinion that the power vested in the Commissioner of Highways is to lay down the rules generally under which local consents and franchises may be carried out, with such special conditions as the particular work may require, and that it is wholly unnecessary to get his consent for the construction of the switches here involved. The powers given in the Railroad Law for the elimination of grade crossings, and the authority vested in the Public Service Commission in connection with such works, together with the necessity of crossing highways in the operation of railroads, make this the only rational view to take of the provisions of section 146 of the Highway Law. It has a useful purpose to serve wholly apart from the powers conferred by the Railroad Law and the Public Service Commissions Law, and it should be confined to that purpose. The Public Service Commission has ample power to deal with the situation

presented.   It now has before it an application looking to the elimination of the grade crossing under conditions most favorable to the public, and the defendant should not be subjected to the judgment from which this appeal is taken.

The judgment appealed from should be reversed.

All concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.