SUN ENTERPRISES, LTD., et al.,
Plaintiffs,

v.

Russell E. TRAIN et al., Defendants.

No. 75 Civ. 68.

United States District Court,
S. D. New York.

May 9, 1975.

212

Marshall, Bratter, Greene, Allison & Tucker, New York City, for plaintiffs; Nicholas A. Robinson, Charles H. Miller, Allen H. Brill, New York City, of counsel.

Paul J. Curran, U. S. Atty., S. D. N. Y., for defendants Train, Hansler,

Morton, and United States; William Roche Bronner, Asst. U. S. Atty., Richard G. Tisch, Atty., Water Enforcement Branch, Environmental Protection Administration, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of N. Y., for defendants Reid, McKeon, Concra, Garvey, Schuler, Sinacori, Gardeski, and State of New York; Olin Harper LeCompte, Stanley Fishman, Julius Feinstein, Albany, N. Y., of counsel.

Harry H. Chambers, Town Atty., Town of Somers, New York City, for defendants Town of Somers; Adams, Minogue, Oehler, Osborne, each as Councilman of the Town Board of the Town of Somers; Quagliano, Cross, Feldschuh, Fogarty, La Porte, Lubkeman, Nuccio, each as member of the Zoning Board of Appeals of the Town of Somers; Fleischhauer, Albertson, Brown, Cukierski, Granata, Kolack, Peer, each as member of the Planning Board of the Town of Somers; Antonaccio; Marcon; and Flood.

Blasi & Zimmerman, Tarrytown, N. Y., for defendants Heritage Hills of Westchester, Paparazzo, McGann, H & H Land Corp., Heritage Hills Sewage-Works Corp., and Heritage Development Group, Inc.; Peter F. Blasi, Davis M. Zimmerman, Tarrytown, N. Y., of counsel.

Angus MacBeth, New York City, for amicus curiae Natural Resources Defense Council.

## OPINION

BONSAL, District Judge.

Plaintiffs commenced this action against certain federal, state, and town officials and certain private defendants on January 8, 1975. The federal and state defendants moved pursuant to F.R.Civ.P. 12(b) to dismiss the complaint. The town and private defendants moved pursuant to F.R.Civ.P. 12(b) to dismiss the complaint and for summary judgment pursuant to F.R.Civ.P. 56. Plaintiffs moved for summary judgment on their "second claim for relief." After these motions became *sub judice*, plaintiffs, on April 21, 1975, filed an amended complaint as a matter of course pursuant to F.R.Civ.P. 15(a), since no responsive pleadings had been served. The foregoing motions will therefore be treated as applying with equal force to the amended complaint.

## PLAINTIFFS

According to the amended complaint, plaintiff Sun Enterprises, Inc. ("Sun") "is the owner of over 500 acres of land in the Town of Somers [New York] . . . including a 40-acre fresh-water wetland containing a spring-fed lake of some 10 acres, two ponds, most of an extensive marsh known locally as No Bottom Marsh . . . and approximately 3,000 feet of land along a stream known locally as Brown Brook . . . which empties into the Muscoot Reservoir on the Croton River, a tributary of the Hudson River . . . . " Plaintiff Lyman Kipp is the president of Sun. Plaintiff Southern New York Fish and Game Association, Inc. ("Southern New York") is described in the amended complaint as a not-for-profit membership corporation which has approximately 2,500 members, "many of whom live in and around the Town of Somers and use and enjoy the natural resources of the Sun property." The amended complaint states that the purposes of Southern New York "are to promote the sports of fishing and hunting, to aid in enforcement of laws for the protection of wildlife, to cooperate with private owners to protect natural resources and to educate the public in the need for conservation and protection of wildlife." Plaintiff Richard Homan is described as the "Second Vice President of Southern New York" and "lives above his bait and tackle shop, which is rented from Sun."

## FEDERAL DEFENDANTS

The federal defendants are Russell Train, Administrator of the United States Environmental Protection Agency ("EPA"); Gerald Hansler, Regional Administrator of EPA for Region II,

which includes the state of New York; Rogers Morton, Secretary of the Interior; and the United States of America.

## STATE DEFENDANTS

The state defendants are Ogden Reid, who replaced James Biggane as Commissioner of the New York State Department of Environmental Conservation ("DEC"); Warren McKeon, Director of Region III of DEC; Louis Concra, Jr., Central Permit Agent for DEC; William Garvey, Chief, Pollution Discharge Elimination System Permit Section, Division of Pure Waters, DEC; Raymond Schuler, New York State Commissioner of Transportation; M. N. Sinacori, Director of Region VIII of the New York State Department of Transportation ("DOT"); Raymond Gardeski, a traffic engineer for DOT; and the State of New York.

## TOWN DEFENDANTS

The town defendants include the Town of Somers, New York; the councilmen of the Town Board of Somers; the members of the Zoning Board of Appeals of the Town of Somers; the members of the Planning Board of the Town of Somers; and the Town of Somers' Building Inspector, Engineer, and Highway Superintendent.

## PRIVATE DEFENDANTS

Defendant Heritage Hills of Westchester ("HHW") is described in the amended complaint as a partnership whose partners include defendants Paparazzo and McGann. HHW is developing an adult condominium community in the Town of Somers known as Heritage Hills of Westchester ("Heritage Hills"), purportedly on over 800 acres of land, "including an extensive portion of Brown Brook's streambed," upstream from the Sun property. According to the amended complaint, defendant H & H Land Corp. is a New York corporation which holds title to the property on which Heritage Hills is being developed. Defendant Heritage Hills Sewage-Works Corporation ("Sewage-Works Corporation") is stated to be a corporation organized and existing under the New York State Transportation Corporation Law. Defendant Heritage Development Group, Inc. is allegedly a Connecticut corporation which exercises "general responsibility, supervision and control for the development of" Heritage Hills.

Plaintiffs assert seventeen separate "claims for relief" arising from injury which they allegedly have, are, and will suffer in connection with the development of Heritage Hills and the discharge of sewage treatment effluent from Heritage Hills into Brown Brook. Plaintiffs seek declaratory, injunctive, and monetary relief.

## FEDERAL DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Four separate "claims for relief" are pleaded against the federal defendants. Plaintiffs' "first claim for relief" (pars. 32–50) alleges that in connection with the issuance of a National Pollutant Discharge Elimination System ("NPDES") permit to "H & H Land Corporation—Heritage Hills of Westchester" for discharge of sewage treatment effluent into Brown Brook, defendants Train and Hansler violated plaintiffs' rights to due process "by failing to implement the EPA regulations for protecting wetlands and by failing to give plaintiffs adequate notice or the opportunity to comment or the opportunity to request a hearing and by violating applicable law on state certification." In addition, plaintiffs have amended their "first claim for relief" to allege that the federal and state defendants also violated section 302 of the Federal Water Pollution Control Act Amendments of 1972 ("Water Act"), 33 U.S.C. § 1312, in connection with the issuance of the NPDES permit to "H & H Land Corporation—Heritage Hills of Westchester." Plaintiffs' "second claim for relief" (pars. 51–56) charges that defendants Train, Hansler, and Morton violated their duty under the Fish and Wildlife Coordination Act, 16 U.S.C. § 661 et seq.

and plaintiffs' rights to due process "by failing to consult each other with respect to the impact on the fish and wildlife on the Sun Property from the NPDES permit sought by 'H & H Land Corp.— Heritage Hills of Westchester.' " Plaintiffs allege in their "fourth claim for relief" (pars. 64–67) that defendant Morton "negligently or wilfully" failed in his duties under 16 U.S.C. § 668 and under the Migratory Bird Treaty Act, 16 U.S.C. § 703 et seq. "to prevent the acts of the private defendants, abetted by the State and Town defendants" which endanger the American bald eagle and "which endanger and kill migratory birds, their nests and eggs in Brown Brook and No Bottom Marsh." Finally, plaintiffs' "fifth claim for relief" (pars. 68–70) alleges that the issuance of the NPDES permit constitutes a taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution.

*First and Fifth "Claims for Relief"*

■ Plaintiffs' first and fifth "claims for relief" pertain directly to the action of the EPA Administrator in issuing an NPDES permit pursuant to section 402 of the Water Act, 33 U.S.C. § 1342. Section 509(b)(1) of the Water Act, 33 U.S.C. § 1369(b)(1), provides in relevant part:

> "Review of the Administrator's action . . . in issuing or denying any permit under section 402, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application of any such person."

Plaintiffs are therefore pursuing their first and fifth claims in a forum other than the one designated by Congress. However, "where, as here, Congress has specifically designated a forum for judicial review of administrative action and does so in unmistakable terms except under extraordinary conditions, that forum is exclusive." Anaconda Co. v. Ruckelshaus, 482 F.2d 1301, 1304–1305 (10th Cir. 1973). *See also* Getty Oil Co. v. Ruckelshaus, 467 F.2d 349 (3d Cir. 1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973); Nader v. Volpe, 151 U.S.App.D.C. 90, 466 F.2d 261 (1972); E. I. DuPont de Nemours and Co. v. Train, 383 F.Supp. 1244 (W. D.Va.1974); American Paper Institute v. Train, 381 F.Supp. 553 (D.D.C.1974); Arizona Public Service Co. v. Fri, 3 ELR 20894 (D.Ariz.1973). The amended complaint fails to show such extraordinary conditions as would justify intrusion upon the Congressionally designated function of the Court of Appeals.

■ Plaintiffs have amended their complaint to assert jurisdiction under the citizen suit provisions of section 505 of the Water Act, 33 U.S.C. § 1365, which provides in relevant part:

> "(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
>
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this Act or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the Administrator.
>
> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 309 (d) of this Act."

Section 505(f), 33 U.S.C. § 1365(f), provides that for the purposes of section 505 "the term 'effluent standard or limitation under this Act' means (1) effective July 1, 1973, an unlawful act under subsection (a) of section 301 of this Act; (2) an effluent limitation or other limitation under section 301 or 302 of this Act; (3) standard of performance under section 306 of this Act; (4) prohibition, effluent standard or pretreatment standards under section 307 of this Act; (5) certification under section 401 of this Act; or (6) a permit or condition thereof issued under section 402 of this Act, which is in effect under this Act (including a requirement applicable by reason of section 313 of this Act)."

Plaintiffs seem to be alleging that the federal and state defendants are in "violation of the effluent limitations set forth in § 302(a) of the Water Act, 33 U.S.C. § 1312(a)." Section 302(a) provides:

"Whenever, in the judgment of the Administrator, discharges of pollutants from a point source or group of point sources, with the application of effluent limitations required under section 301(b)(2) of this Act, would interfere with the attainment or maintenance of that water quality in a specific portion of the navigable waters which shall assure protection of public water supplies, agricultural and industrial uses, and the protection and propagation of a balanced population of shellfish, fish and wildlife, and allow recreational activities in and on the water, effluent limitations (including alternative effluent control strategies) for such point source or sources shall be established which can reasonably be expected to contribute to the attainment or maintenance of such water quality."

The term "effluent limitation" is defined in section 502(11), 33 U.S.C. § 1362(11), as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance." Since the only effluent limitations alleged in the amended complaint are those specified by the federal and state defendants in connection with the H & H Land Corporation NPDES permit itself, the Court fails to see how the federal and state defendants can themselves be in violation of the effluent limitations for the purposes of suit under section 505. Insofar as plaintiffs may be seeking review of the action of the EPA Administrator in approving or promulgating the alleged effluent limitations, section 509(b)(1)(E), 33 U.S.C. § 1369(b)(1)(E), designates the Court of Appeals as the appropriate forum. Although section 505(a) authorizes suit against any person "alleged to be in violation of . . . certification under section 401," neither the federal nor state defendants could be said to be in violation within the meaning of section 505(a) of the state certification allegedly made here. Review of the action of the state defendants in rendering a certification pursuant to section 401 is not, at least in this case, within the jurisdiction of this Court for the reasons set forth at pp. 220, 221 *infra*.

Finally, section 505(a)(2) which gives the district courts jurisdiction to entertain a citizen suit against the Administrator for failure to perform a non-discretionary duty does not apply to a case such as this one where the allegations of the amended complaint indicate not a failure of the Administrator to act, but a challenge to the action of the Administrator in issuing an NPDES permit. Congress has specified in section 509 that review of the action of the Administrator in issuing an NPDES permit may be had in the Court of Appeals. (*Cf.* Anaconda Co. v. Ruckelshaus, *supra*, 482 F.2d at 1304 and Arizona Public Service Co. v. Fri, *supra*, which construed citizen suit and judicial review provisions of the Clean Air Act, 42 U.S.

C. §§ 1857h–2, 1857h–5, analogous to those of sections 505 and 509 of the Water Act.)

The motion of the federal defendants to dismiss the complaint is granted as to plaintiffs' first and fifth "claims for relief."

*"Second Claim for Relief"*

Plaintiffs move for summary judgment on their "second claim for relief," which alleges that defendants Train, Hansler, and Morton violated their duty under the Fish and Wildlife Coordination Act ("Coordination Act"), 16 U.S.C. § 661 et seq., "by failing to consult each other with respect to the impact on the fish and wildlife on the Sun Property from the NPDES permit sought by 'H & H Land Corp.—Heritage Hills of Westchester.'" 16 U.S.C. § 662(a) provides in relevant part:

> "[w]henever the waters of any stream or other body of water are proposed or authorized to be . . . modified for any purpose whatever . . . by any department or agency of the United States, or by any public or private agency under Federal permit or license, such department or agency first shall consult with the United States Fish and Wildlife Service, Department of the Interior . . . with a view to the conservation of wildlife resources by preventing loss of and damage to such resources as well as providing for the development and improvement thereof in connection with such water-resource development."

The following facts are undisputed. On December 27, 1973, the Region II office of EPA received an application for an NPDES permit from "H & H Land Corp.—Heritage Hills of Westchester." On or about April 30, 1974, the Region II office sent to the United States Department of the Interior ("Interior"), Fish and Wildlife Service, Concord Area Office, the public notice, fact sheet, and tentative determinations on the H & H Land Corporation application for an NPDES permit. On or about May 31, 1974, EPA received a letter dated May 29, 1974 from the Concord Area Office stating, "No action, due to present lack of personnel, is contemplated for the following NPDES applications." Among the 87 applications listed was H & H Land Corporation. On July 12, 1974 an NPDES permit was issued to "H & H Land Corporation—Heritage Hills of Westchester."

After enactment of the Water Act there was disagreement between EPA and Interior as to the applicability of the Coordination Act to NPDES permits. *See* Protecting America's Estuaries: Florida, Hearings Before a Sumcomm. of the House Comm. on Government Operations, 93d Cong., 1st Sess., Appendix 4, Part C, at 1261 (1973). (hereinafter cited as Hearings). The matter was apparently resolved within the Executive branch in favor of applicability. *See* Hearings, at 1342. Since neither the plaintiffs nor the federal defendants disputes the applicability of the Coordination Act to NPDES permits, the Court expressly refrains from deciding that issue and assumes for the purposes of plaintiffs' motion for summary judgment that the Coordination Act is applicable to NPDES permits.

The main challenge raised by plaintiffs' "second claim for relief" is not to EPA's compliance with the Coordination Act, but to Interior's failure to discharge its alleged duties when by letter dated May 29, 1974 the Fish and Wildlife Service informed EPA that no action would be taken on the H & H Land Corporation application due to lack of personnel. In raising such a challenge, plaintiffs seek to invalidate the NPDES permit issued to the private defendants; to remand the NPDES application to EPA "to permit Interior to consult with EPA and to afford the plaintiffs an opportunity to present their expert testimony to the EPA," and to enjoin use of the Heritage Hills sewage effluent discharge pipe. Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment, at 18. Nevertheless, the cases cited by plaintiffs generally involve suits against government

agencies which allegedly have either failed to consult with Interior or have failed to take Interior's recommendations into account. *See e. g.* Udall v. Federal Power Commission, 387 U.S. 428, 87 S.Ct. 1712, 18 L.Ed.2d 869 (1967); Environmental Defense Fund v. Froehlke, 473 F.2d 346 (8th Cir. 1972); Akers v. Resor, 339 F.Supp. 1375 (W.D.Tenn. 1972.) The Court has not found any cases dealing with Interior's obligations under the Coordination Act, or any cases which involve a private party's invocation of the Coordination Act to invalidate a government permit issued to another private party, particularly where, as here, substantial funds have been expended in reliance on the validity of the permit.

Shortly after the decision of the various agencies of the Executive branch that the Coordination Act was applicable to NPDES permits, it appears that there were approximately 30,000 pending applications for NPDES permits. *See* Hearings, at 1363. Counsel for the federal defendants informs the Court that as of July 1974 Interior was faced with a referral backlog of 50,000 applications for NPDES permits with 20,000 additional applications being referred annually. Federal Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint, at 22. Apparently in view of the fact that Interior was without funds or personnel adequate to deal with the workload, consideration was given to allowing Interior to waive its right to receive NPDES permit applications. *See* 38 Fed.Reg. 13528, 13532–13533 (1973). However, Congressional concern with such a waiver, *see* Hearings, at 1347–1349, prompted Interior to adopt a policy by which it would prepare reports on all permit applications. These reports would document Interior's position by stating (1) that Interior has no objection to issuance, (2) that Interior recommends denial or modification, or (3) that no action will be taken due to lack of personnel, funds, or technical knowledge. *See* Hearings, at 1354–1355. Proposed guidelines for selecting those permit applications which will receive detailed consideration were announced in August 1974. *See* 39 Fed.Reg. 29552 (1974).

■■ In enacting and amending the Coordination Act, Congress expressed its concern that fish and wildlife conservation be taken into account in connection with water-resource development. *See* S.Rep.No.1981, 85th Cong., 2d Sess., 2 U.S.Code Cong. & Admin.News, pp. 3446–3451 (1958). To this end Congress placed upon any department or agency of the United States or any public or private agency under federal permit or license which proposes to "modify" any stream or other body of water, an obligation to consult with Interior. EPA complied with this obligation when on April 30, 1974, it sent to Interior the public notice, fact sheet, and tentative determinations on the H & H Land Corporation application for an NPDES permit. Although 16 U.S.C. § 662(b) refers to "reports and recommendations" of Interior, there is no express language which requires Interior to respond substantively on every referral. Implicit in the absence of such mandatory language is a grant of discretion to Interior as to how best to utilize its personnel and resources to achieve the Act's purposes of fish and wildlife conservation. In view of the fact that EPA was already required by the Water Act, *see e. g.* 33 U.S.C. §§ 1251, 1312, 1342, to consider and to protect fish and wildlife in determining whether to issue an NPDES permit, the Court cannot say that Interior abused its discretion and thereby violated the Coordination Act by reporting to EPA that due to lack of personnel it would take no action on the H & H Land Corporation application for an NPDES permit. Moreover, any claim that the NPDES permit is invalid because it was issued without substantive comment from Interior relates to the action of the Administrator in issuing the NPDES permit and must be presented to the Court of Appeals pursuant to section 509 of the Water Act. *See* pp. 215, 216 *supra.*

Plaintiffs' motion for summary judgment is therefore denied. Although the federal defendants have not moved for summary judgment, the undisputed facts establish their entitlement to it. In exercise of the Court's power to grant summary judgment against the moving party and in favor of a non-moving party, *see* 6 J. Moore, Federal Practice ¶ 56.12 (2d ed. 1974), summary judgment will be entered in favor of the federal defendants dismissing the "second claim for relief."

*"Fourth Claim for Relief"*

■ Plaintiffs' "fourth claim for relief" alleges that defendant Morton "negligently or wilfully" failed in his duties under 16 U.S.C. § 668, which sets forth criminal and civil penalties for persons who commit certain prohibited acts in connection with bald and golden eagles, and under the Migratory Bird Treaty Act ("Treaty Act"), 16 U.S.C. § 703 et seq. Section 703 makes it unlawful to take, kill, or possess certain migratory birds. Plaintiffs seek to compel Morton to perform his alleged duties by way of mandamus and assert jurisdiction under 28 U.S.C. § 1361 which provides:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Plaintiffs do not allege that they ever brought the private defendants' purported violations of 16 U.S.C. § 668 and the Treaty Act to Morton's attention. Moreover, although relief by way of mandamus may be appropriate where an official has failed to comply with a specific statutory direction or where official conduct has far exceeded any rational exercise of discretion, Leonhard v. Mitchell, 473 F.2d 709 (2d Cir.), cert. denied, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1002 (1973), plaintiffs have cited no specific statutory direction with which Morton has failed to comply and have alleged no facts which suggest that Morton's conduct has far exceeded any rational exercise of discretion. Since there appears no basis for jurisdiction under 28 U.S.C. § 1361, the motion of the federal defendants to dismiss the amended complaint is granted as to the "fourth claim for relief."

## STATE DEFENDANTS' MOTION TO DISMISS

■ Five "claims for relief" are pleaded against the state defendants. Plaintiffs' "sixth claim for relief" (pars. 71–75) charges that Biggane, McKeon, and Garvey "negligently or wilfully failed in their duties under Section 401 of the Water Act to make a timely determination of whether or not to hear new expert testimony for Sun and Kipp on the certification or to hear such testimony and also to make a timely and complete certification that the discharge sought by 'H & H Land Corp.—Heritage Hills of Westchester' will comply with applicable provisions of the Water Act." The "seventh claim for relief" (pars. 76–82) alleges that Biggane, McKeon, and Concra "negligently or wilfully" failed to enforce the conditions of a stream protection permit issued pursuant to Article 15, Title 5 of the New York Environmental Conservation Law, McKinney's Consol.Laws, c. 43–B, and that even if the conditions of the stream protection permit were met, Biggane, McKeon, and Concra violated due process in approving the permit because the prerequisites of 6 N.Y.C.R.R. § 608.6 were not established. Plaintiffs' "eighth claim for relief" (pars. 83–88) asserts that Biggane, McKeon, Concra, and Garvey "wilfully and knowingly" declined to investigate factual complaints by Sun and Kipp; denied "Sun and Kipp timely notice of the DEC certification for the NPDES permit prior to such certification and concealed the fact of certification or issuance of the NPDES permit from them for two months;" and "declined to exercise their authority under applicable law to protect plaintiffs and their interests although they did accommodate the private defendants here-

in by issuing the permits and certification sought by various of the private defendants." In their "ninth claim for relief" (pars. 89–99), plaintiffs charge that Schuler, Sinacori, and Gardeski violated state law in issuing a highway work permit which allowed the laying of a sewer pipe for Heritage Hills, and that since these defendants caused state property to be used as a discharge point for sewage treatment effluent from Heritage Hills, "the State is jointly and severally liable with the private defendants" for damage caused to plaintiffs. Plaintiffs' "tenth claim for relief" (pars. 100–102) alleges that the state's certification for the NPDES permit, and the issuance of the stream protection permit and the highway work permit, resulted in a substantial taking of property without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. As against the state defendants, plaintiffs pray for judgment declaring the state issued permits null and void, and enjoining their use, and alternatively an award to Sun of the value of its property lost.

Insofar as plaintiffs seek retroactive injunctive relief and a monetary award against the state defendants, substantial issues concerning state immunity under the Eleventh Amendment may be presented. *See* Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, it is unnecessary to reach these issues because regardless of possible immunity under the Eleventh Amendment, this Court does not have subject matter jurisdiction to entertain plaintiffs' claims against the state defendants.

Plaintiffs argue that subject matter jurisdiction is established by reason of alleged violations of section 401 of the Water Act, 33 U.S.C. § 1341, and due process of law. Section 401(a)(1) provides in relevant part:

"Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate . . . that any such discharge will comply with the applicable provisions of sections 301, 302, 306, and 307 of this Act. In the case of any such activity for which there is not an applicable effluent limitation or other limitation under sections 301(b) and 302, and there is not an applicable standard under sections 306 and 307, the State shall so certify . . .."

An evident purpose of section 401 is to afford concerned states an opportunity for substantial participation in the issuance of NPDES permits.

In the present case, plaintiffs allege that certain of the state defendants failed to hear new expert testimony and failed to make a "complete" certification. However, section 401 provides no basis for review by this Court of state certification. State certification is merely a step in the administrative process. Section 402(a)(1) of the Water Act, 33 U.S. C. § 1342(a)(1), requires that before an NPDES permit may be issued, the EPA Administrator must also determine that a discharge "will meet either all applicable requirements under sections 301, 302, 306, 307, 308 and 403 of this Act, or prior to the taking of necessary implementing actions relating to all such requirements, such conditions as the Administrator determines are necessary to carry out the provisions of this Act." Once the administrative process has been concluded and the NPDES permit has been issued, the Water Act provides for judicial review in the Court of Appeals. Review by this Court of a state certification under section 401 of the Water Act would not only result in interruption of the administrative process, *see* Anaconda Co. v. Ruckelshaus, *supra*; Nader v. Volpe, *supra*, but would also be an unwarranted intrusion upon the functions of the Court of Appeals and the state courts. Section 401 therefore provides

no basis for jurisdiction over plaintiffs' claims against the state defendants. Moreover, as pointed out at pp. 216, 217 *supra*, this Court has no jurisdiction under the citizen suit provisions of section 505 of the Water Act to entertain plaintiffs' claims against the state defendants.

■ Contending that they have been deprived of property without due process of law and without just compensation, plaintiffs assert that they may maintain suit against the state defendants under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Jurisdiction under 28 U.S.C. § 1343 may exist where a complaint alleges deprivation of property rights through state action. Simmons v. Wetherell, 472 F.2d 509 (2d Cir.), cert. denied, 412 U.S. 940, 93 S.Ct. 2777, 37 L.Ed.2d 399 (1973). However, one clear fact which is disclosed in the amended complaint is that the state defendants are not involved in any alleged taking of plaintiffs' property. None of the state permits here challenged by plaintiffs could be said to authorize or encourage the private defendants to cause damage to plaintiffs' property, *see* Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Watson v. Kenlick Coal Co., 498 F.2d 1183 (6th Cir. 1974), and their issuance does not amount to a taking of property. Certification by the state under section 401 of the Water Act is directed toward maintenance and restoration of water quality and protection of fish and wildlife. The purpose of the stream permit issued pursuant to Article 15, Title 5 of the New York Environmental Conservation Law is to protect the "health, safety and welfare of the people of the state" and "the natural resources of the state, including soil, forests, water, fish and aquatic resources therein." *See* N.Y. Environmental Conservation Law, §§ 15–0501(3)(b), 15–0503(3)(b), 15–0505(3), (McKinney's 1973). The highway work permit manifests the state's interest in the maintenance and safety of its highways. N.Y. Highway Law § 52 (McKinney's Consol.Laws, c. 25, Supp. 1974–

1975). *See* People v. Delaware & Hudson Co., 183 App.Div. 149, 170 N.Y.S. 240 (3d Dept. 1918), aff'd 228 N.Y. 279, 127 N.E. 244 (1920). Nor have plaintiffs alleged such discriminatory action on the part of the state defendants as would raise a substantial question under the Equal Protection Clause of the Fourteenth Amendment. *See* Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Any injury being caused to plaintiffs results from the activities of the private defendants for which plaintiffs have remedies under state law. *See e. g.*, N.Y. Environmental Conservation Law, § 15–0701 (McKinney's 1973); Ferguson v. Village of Hamburg, 272 N.Y. 234, 5 N.E.2d 801 (1936). The motion of the state defendants to dismiss the amended complaint as against them is granted.

## TOWN DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

■ Three "claims for relief" are pleaded against the town defendants. Plaintiffs' "eleventh claim for relief" (pars. 103–111) alleges that various of the town defendants "wilfully and knowingly" failed to protect plaintiffs from damage caused by the private defendants by not enforcing town ordinances, including the provisions of the zoning ordinance relating to the designed residential development ("DRD") permit issued in connection with the development of Heritage Hills. Specifically, plaintiffs charge that various of the town defendants failed to "[p]rotect wetlands, streams, water bodies, water supplies and prevent erosion as required under § 72.02 (B) of the DRD provisions;" failed to "[r]equire location of the [Heritage Hills] sewage treatment plant so as to permit easy linkage to the proposed trunk sewer line, as required under § 22.02(e)(6)(c) of the DRD;" failed to "[r]equire compliance with all the DRD permit conditions, such as the condition that a 100 foot buffer-zone be maintained between the sewage effluent pipe and adjacent property;" "failed to take ef-

fective action in response to the erosion, siltation and flooding of the Sun Property, as required under § 72.02(f)(3)(g) of the DRD provisions, despite many and repeated complaints by Sun and Kipp;" and "failed to enforce the Ordinance of February 11, 1941, numbered 5 in the Town's Ordinance Book, prohibiting those constructing [Heritage Hills] from depositing dirt on any street or highway in Somers, to the end that dirt was deposited on the highway and ran off into Brown Brook causing severe siltation and damage to plaintiffs' interests." Plaintiffs' "twelfth claim for relief" (pars. 112–119) asserts that various town defendants failed to comply with applicable state and town law in connection with the laying of a sewage treatment effluent pipe by Sewage Works Corporation and the issuance of a road opening permit. In their "thirteenth claim for relief" (pars. 120–122) plaintiffs allege that the DRD permit and road opening permit and other related acts and omissions of the town defendants resulted in a taking of property without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The town defendants move to dismiss the complaint and for summary judgment.

As with the state defendants, plaintiffs' allegations against the town defendants are insufficient to establish federal jurisdiction. The damage allegedly being wrought upon the plaintiffs stems from the activities of the private defendants. Such injuries to plaintiffs are not authorized by the permits issued by the town defendants; and although the private defendants may in a sense be encouraged in their alleged transgressions by lackluster enforcement of the law by the town defendants, the actions of the town defendants as alleged in the complaint are not such as would raise a substantial question of deprivation or confiscation of property under the Fifth and Fourteenth Amendments. *Cf.* Cabrera v. Municipality of Bayamon, 370 F.Supp. 859 (D.P.R. 1974); Miles v. District of Columbia,

354 F.Supp. 577 (D.D.C.1973). *Contra* Beaver v. Borough of Johnsonburg, 375 F.Supp. 326 (W.D.Pa.1974). Plaintiffs' allegations against the town defendants also fail to raise a substantial question under the Equal Protection Clause of the Fourteenth Amendment. *See* Williamson v. Lee Optical Co., *supra.* Plaintiffs' remedies for the acts and omissions of the town defendants alleged in the amended complaint lie in the state court. Accordingly, the motion of the town defendants to dismiss the amended complaint as against them is granted.

## PRIVATE DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

■ Five separate "claims for relief" are pleaded against the private defendants. Plaintiffs' "third claim for relief" (pars. 57–63) charges that without obtaining a permit pursuant to section 404 of the Water Act, 33 U.S.C. § 1344, the private defendants "have diverted a stream [Brown Brook] and rechannelled it and constructed and participated in constructing a sewage treatment plant for [Heritage Hills] on the bed of that stream;" "have dredged and discharged material into Brown Brook;" and "are now discharging earth, silt and other materials into Brown Brook." In their fourteenth, fifteenth, sixteenth, and seventeenth "claims for relief" (pars. 123–146) plaintiffs allege respectively prima facie tort, violation of riparian rights, nuisance, and trespass. The private defendants move to dismiss the complaint and for summary judgment in their favor.

The only apparent grounds for federal jurisdiction over the claims pleaded against the private defendants are sections 301 and 404 of the Water Act, 33 U.S.C. §§ 1311, 1344. Although plaintiffs make reference in their "fourteenth claim for relief" to the private defendants "acting under color of law," the allegations of the complaint are insufficient to raise a substantial question under 42 U.S.C. § 1983 or the Fifth and Fourteenth Amendments.

Section 301(a) provides in relevant part:

"Except as in compliance with this section and sections . . . 404 of this Act, the discharge of any pollutant by any person shall be unlawful." Pursuant to section 404,

"[t]he Secretary of the Army, acting through the Chief of Engineers, may issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites."

The term "discharge of a pollutant" is defined in section 502(12), 33 U.S.C. § 1362(12), as "any addition of any pollutant to navigable waters from any point source." Section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." "Point source" is defined in section 502(14), 33 U.S.C. § 1362(14), as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

It appears to be the contention of the private defendants that sections 301 and 404 are inapplicable to any alleged dredge and fill activities because Brown Brook (which is described in the complaint as a stream "which empties into the Muscoot Reservoir on the Croton River, a tributary of the Hudson River'') does not qualify as "navigable waters" within the meaning of these provisions.

The term "navigable waters" as used in the Water Act is defined in section 502(7), 33 U.S.C. § 1362(7), as "the waters of the United States, including the territorial seas." In the Conference Report on the Water Act, the conferees indicated their intention that the term "navigable waters" be given "the broadest possible constitutional interpretation unencumbered by agency determinations which have been made or may be made for administrative purposes." S.Rep.No. 92–1236, 92d Cong., 2d Sess., 2 U.S. Code Cong. & Admin.News, pp. 3776, 3822 (1972). That the phrase "waters of the United States" is to be construed in its geographical sense is underscored by the remarks of Congressman John Dingell made during House debate on the Conference Report. Congressman Dingell stated:

"[T]he conference bill defines the term 'navigable waters' broadly for water quality purposes. . . . It means all 'the waters of the United States' in a geographical sense. It does not mean 'navigable waters of the United States' in the technical sense as we sometimes see in some laws

.    .    .    .    .    .

"[T]his new definition clearly encompasses all water bodies, including main streams and their tributaries, for water quality purposes. No longer are the old, narrow definitions of navigability, as determined by the Corps of Engineers, going to govern matters covered by this bill. . . ." Environmental Policy Division of the Congressional Research Service, 93d Cong., 1st Sess., A Legislative History of the Water Pollution Control Act Amendments of 1972 250 (Comm.Print 1973).

Although the Corps of Engineers apparently continues to construe the term "navigable waters" restrictively, see 33 C.F.R. § 209.260 (1974), the courts have upheld application of the provisions of the Water Act to waterways which are not navigable in the traditional sense. See United States v. Ashland Oil and Transportation Co., 504 F.2d 1317 (6th Cir. 1974), affirming 364 F.Supp. 349 (W.D.Ky.1973); United States v. Holland, 373 F.Supp. 665 (N.D.Fla.1974). In United States v. Ashland Oil and

Transportation Co., *supra,* the Court of Appeals for the Sixth Circuit affirmed the conviction of a defendant under section 311(b)(5) of the Water Act, 33 U.S.C. § 1321(b)(5), for failing immediately to notify an appropriate federal agency after gaining knowledge that it had discharged oil into a non-navigable stream. The oil had discharged directly into the waters of a small tributary to Little Cypress Creek, which "is a tributary to Cypress Creek, which is a tributary to Pond River, which is a tributary to Green River." Only Green River was actually navigable. United States v. Ashland Oil and Transportation Co., 504 F.2d, at 1320. The Court in United States v. Holland, *supra,* held that defendants had violated section 301(a) of the Water Act by filling and otherwise polluting man-made mosquito canals and mangrove wetlands above the mean high waterline. Indeed, the strength of the private defendants' argument that Brown Brook does not fall within the reach of sections 301 and 404 of the Water Act is somewhat undercut by the fact that they did apply for an NPDES permit pursuant to section 402 of the Water Act to allow the discharge of sewage treatment effluent into Brown Brook. Nor does application of sections 301 and 404 to the dredge and fill activities alleged in the complaint exceed Congressional power under the Commerce Clause of the federal Constitution. *See* Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); United States v. Ashland Oil and Transportation Co., *supra*; United States v. Holland, *supra.*

The private defendants further contend that their obtaining of an NPDES permit excuses any need for a permit pursuant to section 404. However, although the EPA Administrator may issue NPDES permits for the discharge of certain pollutants, Congress has directed that the Secretary of the Army, acting through the Chief of Engineers, rather than the Administrator, issue permits for the discharge of "dredged or fill material." Therefore, insofar as plaintiffs' "third claim for relief" alleges that the private defendants

have discharged, are discharging, and propose to discharge into Brown Brook dredged or fill material, without having obtained a permit from the Secretary of the Army pursuant to section 404, a claim for relief is stated over which this Court has subject matter jurisdiction. *See* 33 U.S.C. § 1365; Save Our Sound Fisheries Ass'n v. Callaway, 387 F.Supp. 292 (D.R.I.1974); Scenic Hudson Preservation Conference v. Callaway, 370 F.Supp. 162 (S.D.N.Y.1973), aff'd, 499 F.2d 127 (2d Cir., 1974). Since the present record is insufficient to sustain a defense of laches, *cf.* Clark v. Volpe, 342 F.Supp. 1324 (E.D.La.1972), aff'd, 461 F.2d 1266 (5th Cir. 1972), the motion of the private defendants to dismiss the amended complaint and for summary judgment is denied as to plaintiffs' "third claim for relief."

Plaintiffs seek to have the Court exercise pendent jurisdiction over the state law claims alleged in their fourteenth, fifteenth, sixteenth, and seventeenth "claims for relief." In order for pendent jurisdiction to exist, "[t]he state and federal claims must derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). This Court's subject matter jurisdiction is limited strictly to questions arising from the discharge into Brown Brook of pollutants which qualify as "dredged or fill material" within the meaning of section 404 of the Water Act. However, plaintiffs' state law claims as alleged involve not only discharge of "dredged or fill material," but also discharge of sewage treatment effluent and other activities. Since the state claims present substantial issues of fact additional to those presented by the discharge of "dredged or fill material," as alleged in plaintiffs' "third claim for relief," the state and federal claims cannot be said to derive from a common nucleus of operative fact, and this Court is without pendent jurisdiction. However, even if pendent jurisdiction did exist, the Court would, under the circumstances, decline to exercise it. The motion of the private defendants to dis-

miss the complaint is therefore granted as to plaintiffs' fourteenth, fifteenth, sixteenth and seventeenth "claims for relief."

In reaching the foregoing disposition of the private defendants' motion to dismiss and for summary judgment, the Court does not understand plaintiffs to be presently alleging that the quality of any sewage treatment effluent discharge from Heritage Hills into Brown Brook violates the conditions of the NPDES permit issued to "H & H Land Corporation—Heritage Hills of Westchester."

To summarize, the motion of the federal defendants to dismiss the amended complaint as against them is granted, except as to plaintiffs' "second claim for relief," upon which summary judgment will be entered in favor of the federal defendants. The motions of the state and town defendants to dismiss the amended complaint as against them are granted. The motion of the private defendants to dismiss the amended complaint as against them is granted, except as to plaintiffs' "third claim for relief," upon which the private defendants' motion to dismiss and for summary judgment is denied.

Settle order on notice.